In re the **MARRIAGE OF Rainer H. SCHELP**, Appellant,

and

**Catherine E. Schelp**, Appellee.

No. 06CA0424.

Colorado Court of Appeals, Div. II.

Aug. 7, 2008.

Cook, Cooper, & Moses, LLC, Marie Avery Moses, Greenwood Village, Colorado, for Appellant.

Law Offices of Thomas E. Plog, PC, Thomas E. Plog, Janis A. Oglesby, Englewood, Colorado, for Appellee.

Opinion by Judge ROTHENBERG.

In this dissolution of marriage action, Rainer Schelp (husband) appeals from post-decree orders entered in favor of Catherine Schelp (wife). We affirm in part and dismiss in part.

In May 2004, the parties' marriage was dissolved and permanent orders were entered after a hearing before a retired judge who was selected by the parties pursuant to section 13–3–111, C.R.S.2007. As relevant here, the parties agreed to share husband's pensions equally and to cooperate in preparing the documents necessary to achieve that result.

In April 2005, wife filed a motion to adopt a qualified domestic relations order (QDRO) dividing husband's AMPEX pension equally between the parties. She asserted that husband had refused to sign the order, which was prepared based on information establishing that he had worked for AMPEX for only twenty-three days before the marriage. Alternatively, she requested that the trial court reconsider the division of the husband's pension because, after permanent orders had been entered, he had disclosed that his premarital interest in the AMPEX pension was greater than ten years. She contended his premarital interest was a significant asset that should have been disclosed when the permanent orders were being negotiated.

Husband objected to the relief requested, contending that (1) the parties had agreed to share only the marital portion of the pension; (2) wife's counsel knew the AMPEX pension was small and entirely separate except for one year of service during the marriage; (3) the pension was not a significant asset; and (4) the error was clerical and could be corrected under C.R.C.P. 60(a). He admitted he had previously represented that his premarital interest in the pension was limited to twenty-three days, but he asserted that the discrepancy occurred because the pension documentation was at wife's residence.

On September 27, 2005, the trial court appointed a special master to investigate the facts concerning the QDRO and other tax issues and to "provide a report and recommendations on or before October 28, 2005.

On October 31, 2005, wife filed a combined motion to reopen permanent orders and to allocate undisclosed assets, pursuant to C.R.C.P. 16.2(e)(10). That rule provides: (1) the court shall retain jurisdiction after the entry of a final decree or judgment for a period of five years to allocate material as-

sets or liabilities, *the omission or non-disclosure of which materially affects the division of assets and liabilities;* (2) the provisions of C.R.C.P. 60 shall not bar a motion by either party to allocate such assets or liabilities pursuant to that paragraph; and (3) a material fact is simply one that will affect the outcome of the case. *See In re Marriage of Roberts,* 194 P.3d 443, 2008 WL 3090681 (Colo.App. No. 07CA0903, August 7, 2008).

The master filed his first report with the court in December 2005, and on January 18, 2006, the trial court entered an order, finding that husband had not fully disclosed the value of his pension; that 3.24 years of the pension was marital property; and that wife had agreed to accept half of the marital portion of the pension in reliance on husband's incomplete disclosure. The trial court amended the permanent orders and awarded wife the entire marital portion of the pension, and also appointed the same special master "to investigate the facts surrounding all of the above and to provide a report and recommendations on or before March 1, 2006."

On February 21, 2006, the trial court entered another order requiring each party to pay one-half of the master's fees to investigate wife's allegations.

Husband appeals the trial court's orders entered on January 18, 2006, and on February 21, 2006.

## I.

■ Initially, we conclude that husband's appeal of that part of the January 18, 2006, order appointing the same master to investigate further is premature, because it merely appointed the master to continue his investigation and to submit another report to the court to supplement his earlier one. That part of the court's order did not resolve wife's motion to reopen permanent orders and to allocate undisclosed assets, and therefore, it is not final for purposes of appeal. *See Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 n. 2 (Colo.1982); *In re Marriage of Finer,* 893 P.2d 1381, 1384 (Colo.App.1995)(although the issue was not raised by the parties, the court's subject

matter jurisdiction cannot be waived and can be raised at any time).

■ A final judgment is one that "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties." *Harding Glass Co.,* 640 P.2d at 1125; *In re Marriage of Sorensen,* 166 P.3d 254, 256 (Colo.App.2007).

Husband's reliance on *Gelfond v. District Court,* 180 Colo. 95, 97, 504 P.2d 673 (1972), is misplaced, because that case was an original proceeding under C.A.R. 21. It was not a direct appeal to this court.

■ We also dismiss husband's appeal of the trial court's February 21, 2006, order requiring each party to pay one-half of the master's fees to investigate wife's allegations. That order also is not final for purposes of appeal. *See In re Marriage of West,* 94 P.3d 1248, 1250 (Colo.App.2004) (order is not final until it has been reduced to writing, dated, and signed pursuant to C.R.C.P. 58); *Virdanco, Inc. v. MTS Int'l,* 791 P.2d 1236, 1238 (Colo.App.1990) (for judgment to be final with respect to a whole, single claim, the order must determine all damages resulting from the action).

## II.

Husband next contends the trial court erred as a matter of law in reopening the permanent orders more than six months after they were entered. We disagree.

Husband's argument has been rejected by a division of this court in an opinion being announced on the same date as this opinion. *See In re Marriage of Roberts,* 194 P.3d 443, 445. We agree with that decision and adopt its reasoning.

## III.

Husband next challenges the court's order initially appointing a master. However, we have reviewed the documents that the trial court considered before entering its order appointing the master. Husband failed to object to the initial appointment of the master and therefore did not preserve this issue

for appeal. *See In re Marriage of Atencio,* 47 P.3d 718, 722 (Colo.App.2002).

## IV.

Husband next challenges that part of the trial court's order awarding the entire marital portion of his AMPEX pension to wife. He maintains that the record does not support the trial court's finding that he failed fully to disclose the value of this asset. We disagree.

■ In a nonjury action, the court is required to accept the special master's factual findings unless they are clearly erroneous. *See* C.R.C.P. 53(e)(2); *People v. Shell,* 148 P.3d 162, 171 (Colo.2006).

Neither party has challenged the factual determinations made by the special master in the report filed December 2005. *See* C.R.C.P. 53(e)(2). That report confirmed wife's allegations that husband or his counsel initially represented that the pre-marital portion of the AMPEX pension was limited to three weeks, and then later represented it was limited to one year. The master found that the actual premarital portion of the pension was over twelve years. The documents on which husband now relies do not cast doubt on the master's findings.

■ Accordingly, we conclude the trial court did not err in adopting the special master's factual findings and in determining that husband's omission of the value of his marital portion of his AMPEX pension materially affected the division of assets.

That part of the trial court's January 18, 2006, order reopening permanent orders and awarding wife the entire marital portion of husband's AMPEX pension is affirmed. Husband's appeal is dismissed as to that part of the trial court's January 18 order continuing the appointment of the master and its February 21, 2006, order requiring the parties initially to share the payment of his fees.

Judge BERNARD concurs.

ROVIRA,* J., concurs in part and dissents in part.

Justice ROVIRA concurring in part and dissenting in part.

I respectfully dissent from that part of the majority opinion which affirms the trial court's order reopening the permanent orders and awarding the entire marital portion of Rainer Schelp's (husband's) AMPEX pension to Catherine Schelp (wife).

In this case, the marriage was dissolved and permanent orders were entered in May 2004. Over ten months later, wife filed a motion to reopen permanent orders. On January 18, 2006, the trial court amended the permanent orders. Relying on C.R.C.P. 60(b), husband argues that the trial court erred as a matter of law in reopening the permanent orders more than six months after they were entered.

The majority relies on and adopts the reasoning of a case announced today by another division of this court, *In re Marriage of Roberts,* 194 P.3d 443, 445, 2008 WL 3090681 (Colo.App. No. 07CA0903, August 7, 2008), which rejected the same argument made by husband here. The majority, in adopting the rationale of the *Roberts* case, concludes that wife had five years to seek relief based on husband's alleged nondisclosure and the application of C.R.C.P. 16.2(e)(10). I disagree with that conclusion.

Since nothing further is stated by the majority on this issue, I will direct my attention to the *Roberts* case, and state my views concerning the applicability of C.R.C.P. 16.2(e)(10) to divorce proceedings filed before January 1, 2005.

The Colorado Supreme Court last repealed and amended C.R.C.P. 16.2 in September 2004. The original version of the rule provided that the amended rule was effective January 1, 2005.

The Supreme Court issued a Second Corrective Order to Rule Change 2004(19). This Order stated that Rules 16.2 and 26.2 are

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

repealed and replaced by this Rule 16.2. It further stated:

> Repealed, Amended and Adopted by the Court, En Banc, September 30, 2004, effective for Domestic Relations Cases as defined in 16.2(a) *filed on or after January 1, 2005 and for post-decree motions filed on or after January 1, 2005.*
>
> JUSTICE RICE and JUSTICE COATS would not approve this rule.

(Emphasis added.)

In *Roberts,* the trial court considered the five-year reach-back provision in C.R.C.P. 16.2(e)(10) and concluded that the reach-back provision is not barred by the six-month time limitation of C.R.C.P. 60 for domestic relations cases filed on or after January 1, 2005. The trial court in *Roberts* noted that the dissolution case was filed before January 1, 2005; that C.R.C.P. 26.2 was the rule governing disclosure in domestic relations cases and did not contain a reach-back provision; and that a party seeking to set aside a property division on the basis of fraud or misrepresentation had to rely on the six-month time limitation of C.R.C.P. 60(b).

The trial court in *Roberts* rejected the wife's argument that the five-year reach-back provision of Rule 16.2(e)(10) was applicable because the post-decree motions were filed after January 1, 2005. In conclusion, the trial court stated the structure of this rule indicates that the reach-back provision is intertwined with the affirmative duty to disclose and that "it would be absurd to apply the five year reach back to cases where the affirmative duty to disclose was not also applied." I agree with the trial court's analysis and conclusion.

The *Roberts* division rejected the trial court's analysis and conclusion and reasoned that C.R.C.P. 16.2 "clearly states that it applies to post-trial motions filed on or after January 1, 2005." It further noted that "under husband's interpretation of C.R.C.P. 16.2 the supreme court's directive that the rule would be effective 'for post-decree motions filed on or after January 1, 2005,' would be superfluous."

At this point it is appropriate to again note that the supreme court also stated in the Rule Change 2004(19) that C.R.C.P. 16.2, as amended, would only be applicable to cases "filed on or after January 1, 2005." If this provision is not superfluous, then what is its significance? In my opinion, the five-year reach-back provision applies to domestic relations cases filed on or after January 1, 2005; otherwise why is there the juxtaposition in Rule Change 2004(19) of the words "filed on or after January 1, 2005 and for post-decree motions filed on or after January 1, 2005"?

The Second Corrective Order indicated that the supreme court did not intend for the rule change to affect all cases as of January 1, 2005. Rather, the court limited the application of the amended rule to domestic relations cases filed after January 1, 2005 and to post-decree motions filed after January 1, 2005 related to those cases which were filed after January 1, 2005.

I presume that the Colorado Supreme Court was aware of the well-established rule that absent legislative intent to the contrary, a statute or rule is presumed to operate prospectively. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002); *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 13–14 (Colo.1993). Here, there is no clear intent on the part of the court that the amended C.R.C.P. 16.2 should be applied to cases filed prior to January 1, 2005. Given this lack of clear intent, C.R.C.P. 16.2(e)(10) should not be applied retroactively to permanent orders entered in this case in May 2004.

Since I would hold that the trial court erred as a matter of law in reopening the permanent orders more than six months after they were entered, I see no need to comment on whether C.R.C.P. 16.2 constitutes retrospective legislation and is therefore unconstitutional as discussed in Part II.B of the *Roberts* opinion.