In re the MARRIAGE OF:

Rainer SCHELP, Petitioner

and

Catherine Schelp, Respondent.

In re the Marriage of:

Michael J. Roberts, Petitioner

and

Lori J. Roberts, n/k/a Lori Jean Lipson, Respondent.

In re the Marriage of:

Aaron J. Barnett, Petitioner

and

Teri L. Barnett, Respondent.

Nos. 08SC748, 08SC749, 08SC887.

Supreme Court of Colorado, En Banc.

March 22, 2010.

Kelly Garnsey Hubbell + Lass LLC, Marie Avery Moses, Judd R. Choate, Denver, Colorado, Attorneys for Petitioner Rainer Schelp.

Law Offices of Thomas E. Plog, P.C., Thomas E. Plog, Cambridge, Vermont, Attorneys for Respondent Catherine Schelp.

Robert E. Lanham, P.C., Robert E. Lanham, Boulder, Colorado, Attorneys for Petitioner Michael J. Roberts.

Howard Bittman, Boulder, Colorado, Attorney for Respondent Lori J. Roberts, n/k/a Lori Jean Lipson.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, L. Paul LeRoux II, Lee A. Strickler, Boulder, Colorado, Attorneys for Petitioner Aaron J. Barnett.

Jorgensen, Motycka & Lewis, P.C., Jennifer L. Motycka, Greeley, Colorado, Attorneys for Respondent Teri L. Barnett.

Justice BENDER delivered the Opinion of the Court.

In these consolidated cases, we review three court of appeals opinions holding that a new procedural rule, C.R.C.P. 16.2, provides

the trial courts with jurisdiction to modify property divisions entered in marital dissolution cases that were originally filed before that new rule went into effect. *In re Marriage of Roberts*, 194 P.3d 443, 445 (Colo.App. 2008); *In re Marriage of Schelp*, 194 P.3d 450, 452 (Colo.App.2008); *In re Marriage of Barnett*, No. 06CA1905, 2008 WL 4286989, slip op. at 6 (Colo.App. Sept.18, 2008). After reviewing the purpose and analyzing the wording of the new rule, we hold that C.R.C.P. 16.2 does not allow the trial courts to retain jurisdiction to modify property divisions based on disclosures made pursuant to petitions for dissolution that were filed before the effective date of the new rule.

The facts in these cases are somewhat similar. In each case, a husband and wife filed a petition for marital dissolution before January 1, 2005.[1] The trial court divided the marital property based on information from the parties' financial disclosures. In each case, after the trial court entered the decree of dissolution, the wife alleged that she discovered that her husband's financial disclosures understated the value of certain assets. The wife then filed a post-decree motion after January 1, 2005, to set aside the property division or amend the permanent orders because of the husband's alleged misstatements and omissions in his financial disclosures.

The filing dates of the petitions for dissolution and the filing dates of the post-decree motions are crucial to understanding these disputes. In 2005, the Colorado Supreme Court changed the procedures governing dissolution of marriage. Pertinent here, the court increased the amount of time that a trial court would retain jurisdiction over marital dissolution cases when a spouse misstated or omitted assets in his or her financial disclosures. Pursuant to C.R.C.P. 60(b), which previously governed the relief a spouse could obtain because of omissions or misstatements of fact in financial disclosures, the trial court generally retained jurisdiction for six months after the decree was entered.[2] Under the new and current rule, C.R.C.P. 16.2(e)(10), the trial court retains jurisdiction for five years after the decree or judgment has been entered when a party omits or misstates material assets in his or her financial disclosures.

This five-year retention provision, and the rest of the new rule, went into effect on January 1, 2005. Initially, when this court promulgated the new version of C.R.C.P. 16.2, the rule read "effective January 1, 2005."[3] However, this court gave more specific instructions by issuing a Corrective Order. This Corrective Order provided that the new rule was "effective for Domestic Relations Cases ... filed on or after January 1, 2005 and for post-decree motions filed on or after January 1, 2005."[4]

The wives argue that subsection 16.2(e)(10) of the new rule, construed in conjunction

---

1. In *Schelp*, the husband filed a petition for legal separation. For simplicity, we treat the filing of a petition for marital dissolution and the filing of a petition for legal separation as the same.

2. The relevant part of C.R.C.P. 60(b) provides:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken.* (Emphasis added). We note that C.R.C.P. 60(b) provides three exceptions that the parties do not raise here. Those exceptions involve independent actions to relieve a party from judgment, fraud upon the court, and collateral attacks on a judgment. *See id.*

3. Rule Change 2004(19), Colorado Rules of Civil Procedure (Repealed, Amended and Adopted by the Court En Banc, Sept. 30, 2004, effective Jan. 1, 2005), htt p://www.courts.state.co.us/Courts/SupremeCourt/Rule_Changes/2004.cfm.

4. Rule Change 2004(19) Second Corrective Order, Colorado Rules of Civil Procedure (Repealed, Amended and Adopted by the Court En Banc, Sept. 30, 2004, effective Jan. 1, 2005), http://www.courts.state.co.us/Courts/Supreme_Court/Rule_Changes/2004 .cfm.

with the Corrective Order, grants the trial court jurisdiction to modify the property divisions in their respective cases. The wives assert that the new rule applies to their cases because they filed post-decree motions after the effective date of the new rule.

We agree that the new rule applies, in a general sense, to post-decree motions filed after January 1, 2005, even where the underlying petitions for dissolution were filed before that date. However, we disagree with the assumption that the five-year retention provision allows a court to reopen property divisions that were based on disclosures made pursuant to domestic relations cases initially filed under the old rule. Instead, the five-year retention provision applies only to disclosures made pursuant to the new rule for the purposes of resolving new cases or new post-decree motions filed after the effective date.

To reach this conclusion, we review the purpose and language of the new rule as well as the Corrective Order. The new rule establishes new case management procedures and mandatory affirmative disclosure duties. These new procedures and duties apply to domestic relations cases and post-decree motions filed after the effective date. To strengthen the new disclosure duties, the new rule contains a five-year retention provision, which requires the trial court to retain jurisdiction for five years after entry of judgment or a final decree. This provision allows trial courts to reallocate the assets and liabilities of any parties who made material misstatements or omissions in disclosures made pursuant to the new rule. The words of this provision specifically address the five-year period *after* the entry of any decree or judgment that relied on disclosures made under the new rule. It refers to the future, not the past. It also operates in tandem with the new affirmative disclosure duties. If these new disclosure duties do not apply, then the five-year retention provision also does not apply. In these cases, we hold that, where a spouse made his disclosures pursuant to a petition for dissolution filed under the old rule, neither the heightened duties of disclosure nor the five-year retention provision applies to those prior disclosures. Accord-

ingly, we reverse each of the three court of appeals opinions and remand these cases to that court with directions to return each case to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings

### A. In re Marriage of Roberts

Michael Roberts filed a petition for dissolution of marriage from his wife Lori Jean Lipson on November 1, 2004, before the new rule went into effect. The court dissolved their marriage on September 14, 2005. According to the decree of dissolution, Lipson received a fixed sum of money while Roberts retained the businesses he owned and any increases in the value of those businesses that may have occurred during the marriage.

In his financial affidavit submitted before the dissolution, Roberts listed the net value of his businesses as $0, but he qualified this estimate by saying it might not be accurate due to unknown values. He indicated that one of his businesses owned a 5.41 percent partnership interest valued at $663,000 in Western Brands, the predecessor of Crocs, Inc. Lipson filed a post-decree motion on January 23, 2007, alleging that this valuation was incorrect and that Roberts's ownership interest in Western Brands increased by more than $20 million during their marriage. She based these allegations on documents filed with the Securities and Exchange Commission. Further, she maintained that Roberts was aware that his businesses were worth substantially more than the amount he reported in his financial affidavit and that she had relied on his erroneous representations. She filed her post-decree motion nearly two years after the new rule went into effect and nearly fifteen months after the decree had been entered. The trial court denied the post-decree motion on the grounds that the court lacked jurisdiction to reopen the property division under C.R.C.P. 60(b) because Lipson filed the post-decree motion more than six months after entry of the decree.

### B. In re Marriage of Schelp

Rainer Schelp filed a petition for legal separation from his wife Catherine Schelp on

April 16, 2003, before the new rule went into effect. The trial court dissolved their marriage on May 19, 2004, and entered permanent orders on June 15, 2004, *nunc pro tunc* to May 19, 2004. In these permanent orders, the trial court divided the husband's AMPEX pension equally between the parties and stated that the parties would prepare a Qualified Domestic Relations Order ("QDRO") and other documentation to achieve that division.

While the parties cooperated in preparing the QDRO, Rainer Schelp represented that the premarital share of the pension equaled twenty-three days of benefits. However, he subsequently admitted that the premarital share of the pension equaled nearly twelve and a half years of benefits. Because Rainer Schelp's premarital share increased substantially, the marital share that Catherine Schelp believed she was entitled to decreased substantially.

Catherine Schelp filed a post-decree motion on April 21, 2005, alleging that her husband should have accurately disclosed the value of the premarital share. She requested that the court "fashion some other division of the AMPEX pension which takes into account Petitioner's undisclosed and quite valuable premarital share." Catherine Schelp filed this motion four months after the new rule went into effect and ten months after the permanent orders were entered. The trial court appointed a Special Master to investigate Rainer Schelp's disclosure of the pension. After considering the findings of the Special Master, the trial court exercised jurisdiction over the case, reopened the property division, and awarded the entire marital share of the pension to Catherine Schelp.

## C. In re Marriage of Barnett

Teri Barnett filed a petition for dissolution from her husband Aaron Barnett on October 28, 2002, before the new rule went into effect. The court dissolved their marriage on March 14, 2003, and divided one of Aaron Barnett's pension benefits so that he would retain the pension and Teri Barnett would receive a fixed sum of money.

In his financial disclosures submitted before the dissolution, Aaron Barnett did not disclose a second pension benefit, and Teri Barnett later discovered this omission. Teri Barnett filed a post-decree motion on June 15, 2005, to reopen the property division. She filed the post-decree motion six months after the new rule went into effect and twenty-seven months after the decree of dissolution was entered. The trial court determined that it had jurisdiction to reopen the property division and divided the second pension equally between the parties.

## D. Court of Appeals' Decisions

The court of appeals held in each case that the trial court possessed jurisdiction to modify the property divisions, despite the fact that the petitions for dissolution were filed before January 1, 2005, the effective date of the new rule. In *Roberts*, the court stated:

> C.R.C.P. 16.2, as repealed and reenacted in September 2004, applies to post-decree motions filed on or after January 1, 2005, that seek to reopen a property division or to set aside a separation agreement based on alleged misstatements, omissions, or nondisclosure of assets or liabilities that materially affect the division of property. This is so even if the parties' action for a decree of legal separation or dissolution of marriage was filed before that date.

*Roberts*, 194 P.3d at 447. The *Roberts* court relied on the wording of the Corrective Order to hold that the new rule applies to post-decree motions filed on or after the effective date. The court then applied the five-year retention provision in C.R.C.P. 16.2(e)(10) to hold that the trial court had jurisdiction to modify the property division. *Id.* Other panels of the court of appeals adopted the reasoning in *Roberts*. *Schelp*, 194 P.3d at 452; *Barnett*, No. 06CA1905, slip op. at 6. Justice Rovira, sitting by assignment on the court of appeals, dissented from the majority opinion in *Schelp*. *Schelp*, 194 P.3d at 454 (Rovira, J., dissenting). In each case, the husbands filed a petition for certiorari seeking review of whether the five-year retention provision should have applied to their cases. We granted certiorari and consolidated these

cases.[5]

## III. Analysis

The wives argue that because they filed their post-decree motions after the new rule went into effect, they can avail themselves of the five-year retention provision. They contend that this provision allows the trial courts to modify the property divisions in their respective cases, despite the fact that the contented disclosures were made pursuant to petitions filed before the effective date. To evaluate this claim, we review the purpose and analyze the wording of the new rule. We focus on two key changes made by the new rule: more flexible case management procedures and the new affirmative disclosure requirements. We construe the five-year retention provision in connection with these other key provisions of the rule to give consistent, harmonious, and sensible effect to all its parts. *Carlson v. Ferris*, 85 P.3d 504, 508 (Colo.2003).

### A. New Rule C.R.C.P. 16.2

The Colorado Supreme Court enacted the current version of C.R.C.P. 16.2 to provide a uniform procedure for the resolution of all domestic relations cases and to reduce the negative impact of adversarial litigation. C.R.C.P. 16.2(a). Toward these ends, the court made certain changes to the previous rule. The new rule contains new case management procedures; heightened affirmative disclosure requirements; and a five-year retention provision to reallocate assets and liabilities after material misstatements or omissions have been made under the new heightened disclosure requirements.

The new case management procedures give the trial courts more flexibility in administering their dockets. Under the old version of C.R.C.P. 16.2, trial courts were required to follow standardized procedures and comply with numerous fixed deadlines. This rule prevented trial judges from adjusting procedures to the circumstances of each case. *See* C.R.C.P. 16.2(d) (2004) (repealed 2005). In contrast, the new rule allows each judicial district to adopt a Standard Case Management Order, which can then be modified in each particular case. C.R.C.P. 16.2(b). This new case management system, designed to "provide the parties with a just, timely and cost effective process," establishes a more active and flexible case management system. *Id.* The new rule contains fewer fixed deadlines than the old rule. *Compare* C.R.C.P. 16.2(c)-(d) *with* C.R.C.P. 16.2(c)-(d) (2004) (repealed 2005). This flexible approach gives the trial court, attorneys, and parties the ability to tailor a case management order to meet the specific needs of each case. *See* David M. Johnson, Pamela A. Gagel & Simon Mole, *New Rule 16.2: A Brave New World*, Colo. Law., Jan. 2005, at 101, 102–03.

The new rule explicitly extends these more flexible management procedures to post-decree motions. As the rule provides, the trial court "shall review" post-decree motions or motions to modify within forty-five days of the date of filing, but the trial court has substantial discretion to decide whether such motions "will be scheduled and resolved under the provisions of [16.2](c) or will be handled on the pleadings or otherwise." C.R.C.P. 16.2(d). The new rule specifically increases the trial court's discretion regarding the management of post-decree motions, which serves its overall goal of reducing the adversarial nature of litigation in domestic relations cases.

The new rule also changes the duties governing disclosures in domestic relations cases. Under the old rule, parties were required to submit financial affidavits, approved by the supreme court, as well as tax returns, pay stubs, and pension information.

---

5. Specifically, we granted certiorari in these three cases to determine one central issue:

   Whether the court of appeals erred when it reversed the trial court and held that C.R.C.P. 16.2(e)(10) gives the trial court five years of continuing jurisdiction to retroactively reopen divorce cases when a post-decree motion alleging improper asset disclosure was filed after the rule's effective date of January 1, 2005 even though the underlying divorce case was filed before the new rule was in effect.

   We also granted certiorari to decide an additional issue in *Schelp:* "Whether the court of appeals erred in concluding that retrospective application of C.R.C.P. 16.2(e)(10) to dissolution of marriage cases filed and concluded prior to January 1, 2005, was constitutional."

*See* C.R.C.P. 26.2(a)(1) (2004) (repealed 2005). The parties, however, were under no obligation to disclose all material facts. As a result, the responsibility for verifying that these documents were complete and accurate fell on the party receiving the documents. *See Gavrilis v. Gavrilis*, 116 P.3d 1272, 1275 (Colo.App.2005) (holding that wife was barred from a damages action against husband because husband's fraud could have been discovered with reasonable diligence and litigated within the dissolution proceeding or within the applicable six-month period after the decree).

The new disclosure duties, in contrast, shift the responsibility for omissions or misstatements from the party receiving the documents to the party submitting them. Subsection (e) of C.R.C.P. 16.2 establishes the new affirmative disclosure duties. It requires that parties disclose all facts that materially affect the rights and interests of the parties:

> Parties to domestic relations cases owe each other and the court a duty of full and honest disclosure of all facts that materially affect their rights and interests and those of the children involved in the case. The court requires that, in the discharge of this duty, *a party must affirmatively disclose all information that is material to the resolution of the case without awaiting inquiry from the other party. This disclosure shall be conducted in accord with the duty of candor owing among those whose domestic issues are to be resolved under this Rule 16.2.*

C.R.C.P. 16.2(e)(1) (emphasis added). This provision embraces the principle that spouses are in a fiduciary relationship with each other. *In re Marriage of Manzo*, 659 P.2d 669, 674 (Colo.1983). These new affirmative disclosure requirements depart from the previous, traditional discovery procedures, which required the spouse receiving the discovery to resort to formal discovery devices if disclosures made under the old rules appeared inadequate. The new rule specifically repealed C.R.C.P. 26.2, which governed discovery under the old rules. Like the new case management procedures, the new heightened disclosure requirements were designed to re-

duce the adversarial nature of domestic relations litigation.

The words of Rule 16.2(e)(1)—that disclosures *"shall be conducted with the duty of candor owing among those whose domestic issues are to be resolved under this new rule 16.2 "*—indicate that the new duties of candor shall apply to all new disclosures made to resolve domestic issues. The words "shall be conducted" and "to be resolved" employ the future tense, and this subsection explicitly incorporates the requirements laid out under the "new rule 16.2" As such, the meaning of this subsection appears plain: *future* disclosures made under the new rule that are necessary to resolve domestic issues in new petitions and in new post-decree motions must comply with the requirements of 16.2(e)(1).

### B. The Five–Year Retention Provision

The new disclosure duties specified in C.R.C.P. 16.2(e)(1) operate in tandem with the five-year retention provision of C.R.C.P. 16.2(e)(10). The five-year retention provision states that for any disclosures made under the new rules, the court shall retain jurisdiction for a period of five years after the entry a decree to reallocate assets and liabilities if either party failed to comply with his or her affirmative duties to disclose financial information. Rule 16.2(e)(10) renders inactive C.R.C.P. 60(b)'s six-month window, which formerly operated as a bar for such retained jurisdiction.

Rule 16.2(e)(10) provides:
> *As set forth in this section,* it is the duty of parties to an action for decree of dissolution of marriage, legal separation, or invalidity of marriage, *to provide full disclosure of all material assets and liabilities. If the disclosure contains misstatements or omissions, the court shall retain jurisdiction after the entry of a final decree or judgment for a period of 5 years to allocate material assets or liabilities,* the omission or non-disclosure of which *materially affects* the division of assets and liabilities. *The provisions of C.R.C.P. 60 shall not bar a motion by either party to allocate such assets or liabilities pursuant to this paragraph.* This paragraph shall

not limit other remedies that may be available to a party by law.

(Emphases added). This provision states that courts "shall retain" jurisdiction for five years after entry of a final decree or judgment. Something can be retained only when it is already possessed in the first place. *See Webster's Third New International Dictionary* 1938 (2002) (defining retain as "to hold or continue to hold in possession or use"). Of course, the term "shall" makes the retention period mandatory. Further indicating that the rule is forward looking, the five-year retention period applies only to an omission or disclosure that "materially *affects* the division of assets." C.R.C.P. 16.2(e)(10) (emphasis added). It does not apply to a disclosure that *affected* the past division of assets under the old rule. The provision is not written in the past tense and does not address disclosures made pursuant to cases filed before the effective date.

The five-year retention provision also renders C.R.C.P. 60 inactive when a spouse seeks to reopen a division of assets and liabilities based on disclosures made pursuant to the new rule. The relevant clause is stated in the present tense: "The provisions of C.R.C.P. 60 shall not bar a motion by either party to allocate such assets or liabilities pursuant to this paragraph." C.R.C.P. 16.2(e)(10). This phrasing indicates that C.R.C.P. 60 still applies where the disclosures were made pursuant to the old rule, in cases filed before the new rule went into effect.

Likewise, the five-year retention provision does not operate independently. Rather, it works in tandem with the new affirmative disclosure requirements. It is located within 16.2(e), which establishes the new affirmative disclosure requirements as a whole. The text of the five-year retention provision explicitly refers to the new affirmative disclosure requirements. It begins, "As set forth in this section," and mentions the duties to "provide full disclosure of all material assets and liabilities." C.R.C.P. 16.2(e)(10). The rule's language indicates that the five-year retention provision must operate in conjunction with the new affirmative disclosure requirements. The five-year retention provi-

sion applies only where the new disclosures fail to comply with the heightened duties established by C.R.C.P. 16.2(e)(1).

The parties and the lower courts have labeled this rule the five-year "reach-back" provision. Some have interpreted it to provide courts with jurisdiction to modify property divisions made pursuant to the old disclosure requirements. Such nomenclature is confusing. As we interpret the structure and language of this provision, we conclude that it does not "reach back" to allow the courts to correct misstatements or omissions made pursuant to the old rule. Rather, it projects forward. Just like the new rule itself, the five-year retention provision begins to operate only once a new case or a new post-decree motion is filed after the effective date. More precisely, the five-year retention provision becomes operative only after a party has filed disclosures under the new rule to resolve a domestic relations case or post-decree motion filed after January 1, 2005.

### C. Corrective Order

The Corrective Order supports this holding and clarifies how the new rule operates. Initially, when this court promulgated the new version of C.R.C.P. 16.2, the rule read "effective January 1, 2005." Under this initial effective date clause, it may have been unclear whether, and to what extent, the new rules applied to post-decree motions filed after the effective date where the underlying case was filed before the effective date. To clarify this ambiguity, this court issued a Corrective Order on February 6, 2005, which provided that the rule was "effective for Domestic Relations Cases ... filed on or after January 1, 2005 and for post-decree motions filed on or after January 1, 2005." The Corrective Order states that the new rule applies not only for new cases filed after the effective date but also for post-decree motions filed after the effective date.

The court of appeals relied on the wording of the Corrective Order to hold that the new rule applies to post-decree motions filed after the effective date. *See Roberts*, 194 P.3d at 447. The court of appeals then applied C.R.C.P. 16.2(e)(10) to hold that the trial

courts had jurisdiction to modify the property divisions in each case. *Id.*

We agree with the court of appeals to the extent that C.R.C.P. 16.2 governs post-decree motions filed after January 1, 2005, for the resolution of matters raised by the post-decree motion. However, we disagree with the court of appeals' conclusion that the five-year retention provision extends jurisdiction to cases in which the disclosures were subject to the former rule. As discussed above, the heightened affirmative disclosure duties of C.R.C.P. 16.2(e)(1) govern "domestic issues to be resolved under this Rule 16.2." The duties were not applicable to cases filed before January 1, 2005, which were subject to a different rule. Thus, the court of appeals' interpretation is contrary to the wording of the rule. Moreover, as noted by Justice Rovira, the application of heightened affirmative disclosure duties to cases filed before the new rule went into effect would lead to an illogical result. *See Schelp,* 194 P.3d at 454 (Rovira, J., dissenting). At the time the parties filed their petitions for dissolution, they could not anticipate that the rule would change and that additional duties would be imposed. Thus, we conclude that a retroactive application of the new version of C.R.C.P. 16.2(e)(10) to cases filed before January 1, 2005 would lead to the illogical result that some spouses who properly complied with the discovery requirements under the old rule were in violation of heightened requirements that went into effect after discovery had been completed.

## D. Application

We now turn to the facts of the present cases to determine whether the five-year retention provision gives trial courts jurisdiction to modify the property divisions. In each of these three marital dissolution cases, the husbands' filed their allegedly inaccurate disclosures pursuant to petitions for dissolution filed *before* the effective date of the new rule. Therefore, these disclosures were made pursuant to the old disclosure requirements. As such, the new five-year retention period does not apply to those disclosures, and the courts do not have jurisdiction under

C.R.C.P. 16.2(e)(10) to modify the property divisions in any of these three cases.

## IV. Conclusion

For the reasons stated above, we reverse each of the three court of appeals opinions and remand these cases to that court with directions to return each case to the trial court for proceedings consistent with this opinion.