2015 COA 58

**IN RE the MARRIAGE OF Karen HUNT, Appellant,**

and

**Shane Hunt, Appellee.**

**Court of Appeals No. 14CA0064**

Colorado Court of Appeals,
Div. VI.

Announced May 7, 2015

Elbert County District Court No. 12DR82, Honorable Jeffrey K. Holmes, Judge

Robert E. Lanham, P.C., Robert E. Lanham, Boulder, Colorado, for Appellant

The Wollard Law Firm, P.C., Eric D. Wollard, Wheat Ridge, Colorado, for Appellee

Opinion by JUDGE FURMAN

¶ 1 Karen Hunt (wife) appeals from the district court's order denying her relief from the provision of the parties' memorandum of understanding (MOU) dividing the marital value of a business, Big R Construction Company (Big R), owned and operated by Shane Hunt (husband). Wife contends that husband violated C.R.C.P. 16.2(e) by not disclosing mandatory financial information regarding Big R and that, therefore, the district court erred by not granting her motion to reopen the property division under C.R.C.P. 16.2(e)(10). Because we agree with both of wife's contentions, we reverse the district court's order and remand the case for further proceedings.

¶ 2 In July 2012, wife petitioned for legal separation of the parties' marriage. One month later, husband filed a certificate of mandatory disclosures under C.R.C.P. 16.2.

¶ 3 In September 2012, based on an agreement reached in mediation, the parties entered into the MOU, which provides, in relevant part:

The parties agree that [wife's] 50% marital share of the business, Big R Construction Co., Inc. will be $250,000. Neither attorney is offering or endorsing valuation of the business and each party has had the opportunity to perform any due diligence with regard to the value of the business as they so desire.

¶ 4 On September 26, 2012, as requested by the parties, the district court entered the MOU provisions as partial permanent orders.

¶ 5 In March 2013, wife moved for relief from the MOU provisions relating to Big R, in relevant part, under C.R.C.P. 16.2(e)(10), contending that husband did not disclose required information to her. She based her contentions on formal discovery she propounded several months after the MOU regarding the value of Big R. (A subsequent appraisal from a forensic accounting firm retained by wife estimated the total value of Big R and its related assets as $2,165,000. Husband's expert estimated the value at $740,000.)

¶ 6 In denying wife's motion, the district court relied on the language in the parties' MOU and found that there was no violation of C.R.C.P. 16.2 as to Big R because "[t]he parties simply made the choice to go forward [with the MOU] without seeking additional information." The court determined that it would not "undermine" the parties' agreement by considering whether wife might not have entered into it if she had received additional information. Thus, even though "there were some things that could have been obtained that might have altered" wife's decision to enter into the MOU, it would not be consistent with the language of the MOU for the court to consider that issue.

¶ 7 The court then dissolved the parties' marriage at their request and entered permanent orders, dividing Big R in accordance with the MOU.

¶ 8 Because wife's appeal concerns provisions of C.R.C.P. 16.2, we begin with an overview of the governing law.

## I. C.R.C.P. 16.2

¶ 9 C.R.C.P. 16.2 sets forth special case management and disclosure procedures for domestic relations cases, recognizing that family members involved in such cases stand in a special relationship to each other and to the court system. *See* C.R.C.P. 16.2(a). The intent of this rule is to reduce the negative impacts of adversarial litigation in these types of cases. *See id.* To that end, the rule provides for heightened affirmative disclosure requirements for the spouses and a five-year retention of jurisdiction to reallocate assets if material omissions or misstatements were made in the parties' disclosures. *In re Marriage of Schelp*, 228 P.3d 151, 155 (Colo. 2010); *see* C.R.C.P. 16.2.

¶ 10 We review de novo the district court's interpretation and application of C.R.C.P. 16.2. *In re Marriage of Dadiotis*, 2014 COA 28, ¶ 6, 343 P.3d 1017.

¶ 11 Husband's argument that the abuse of discretion standard applies is unpersuasive. The district court did not determine whether husband's nondisclosures materially affected the division of assets and liabilities. Rather, the court determined that C.R.C.P. 16.2(e)(10) did not apply because of the language of the MOU. Thus, whether its decision in that regard is erroneous is a question of law, subject to de novo review. *See id.*

### A. The Heightened Disclosure Requirements of C.R.C.P. 16.2(e)

¶ 12 We first consider whether husband violated C.R.C.P. 16.2(e) by not disclosing mandatory financial information regarding Big R. We conclude that he did.

¶ 13 C.R.C.P. 16.2(e) imposes on parties in domestic relations cases a duty to "affirmatively disclose all information that is material to the resolution of the case without awaiting inquiry from the other party." C.R.C.P. 16.2(e)(1); *Schelp*, 228 P.3d at 156. Such information includes, as relevant here, "all personal financial statements, statements of assets or liabilities, and credit and loan applications prepared during the last three years;" the last three fiscal years' and all year-to-date business financial statements; and documents stating the "value of all real property in which a party has a personal or business interest." C.R.C.P. 16.2(e)(2) & app. form 35.1(c)-(e).

¶ 14 The disclosure duty imposed under C.R.C.P. 16.2(e) differs from the duty that existed before the current version of the rule went into effect in 2005. The current version of the rule shifts the burden of disclosure to the party in possession of material information. *See Schelp*, 228 P.3d at 155–56. Thus, each spouse has an affirmative duty to disclose all material information, including that specified in the rule and Form 35.1, without the other spouse having to request it. *See* C.R.C.P. 16.2(e)(1)-(2); *see also Schelp*, 228 P.3d at 156.

¶ 15 The documents that wife claimed husband did not disclose include, in relevant part, all personal and business financial statements prepared in the last three years; loan applications and agreements from 2011 and 2012; a 2010 appraisal of Big R's real property; and a 2012 appraisal of its equipment. At the hearing, husband's attorney did not dispute that such "underlying information" had not been disclosed to wife. Thus, husband violated the disclosure requirements of the rule regarding Big R. *See* C.R.C.P. 16.2(e)(2) & app. form 35.1.

### B. C.R.C.P. 16.2(e)(10)

¶ 16 We next consider whether the district court erred by not granting wife's motion to reopen the property division under C.R.C.P. 16.2(e)(10). We conclude that it did.

¶ 17 C.R.C.P. 16.2(e)(10) provides, in relevant part:

[I]t is the duty of parties to an action for decree of dissolution of marriage ... to provide full disclosure of all material assets and liabilities. If the disclosure contains misstatements or omissions, the court shall retain jurisdiction after the entry of a final decree or judgment for a period of 5 years to allocate material assets or liabilities, the omission or non-disclosure of which materially affects the division of assets and liabilities. The provisions of C.R.C.P. 60 shall not bar a motion by either party to allocate

such assets or liabilities pursuant to this paragraph.

¶ 18 Based on the plain language of this rule, we conclude that the district court erred by not granting wife's motion to reopen the property division. *See id.; see also Dadiotis,* ¶¶ 7–8. We reach this conclusion because the rule permits either party to move to "allocate material assets or liabilities" that were not disclosed when the nondisclosure "materially affects the division of assets and liabilities." C.R.C.P. 16.2(e)(10). And, because it is undisputed that husband violated the disclosure requirements of the rule regarding Big R, the five-year retention provision at C.R.C.P. 16.2(e)(10) applies. *See Schelp,* 228 P.3d at 157 (noting that the five-year retention provision applies when a party's disclosures did not comply with the new heightened disclosure requirements of the rule).

¶ 19 Without husband having violated the disclosure requirements of C.R.C.P. 16.2, wife would have been bound by her decision to enter into the MOU, acknowledging the uncertain value of Big R. In that situation, she would have had all the information she was entitled to receive under the rule and, thus, could have knowingly and intelligently waived her right to conduct any further due diligence as to the value of Big R. But, as wife points out, had she received the documents husband withheld, she might not have entered into the MOU in the first place.

¶ 20 And, under the special provisions of C.R.C.P. 16.2, uniquely applicable in domestic relations cases, it was not wife's burden to request these documents before entering into the MOU. Rather, it was husband's affirmative duty to provide them to her. *See Schelp,* 228 P.3d at 156. As wife also points out, the circumstance she alleges here is exactly what the new version of C.R.C.P. 16.2 was designed to prevent—husband was in possession of documents relevant to the value of a significant marital asset, and wife was not. Yet, he did not provide the documents to her in connection with their marital dissolution proceedings and settlement negotiations.

¶ 21 Even so, husband mounts several challenges to applying C.R.C.P. 16.2(e)(10) to this case. First, he contends that the rule does not apply here because wife moved for relief *before* the final decree entered, rather than during the five-year retention period described in the rule. We disagree because the district court had already entered its order adopting the MOU provisions as partial permanent orders at the time wife moved for relief under C.R.C.P. 16.2(e)(10).

¶ 22 We also note that the rule does not *limit* the court's jurisdiction to reallocate assets and liabilities to a five-year period after the final decree enters, as husband contends. Rather, it extends the court's jurisdiction, not subject to the limitations of C.R.C.P. 60, for that period of time. *See* C.R.C.P. 16.2(e)(10). Thus, wife was not precluded from moving for relief under the rule after the court entered the MOU as partial permanent orders but before the final decree entered.

¶ 23 We will not interpret the rule as requiring an absurd or unreasonable result. *See* § 2–4–201(1)(c), C.R.S.2014; *In re Marriage of Roosa,* 89 P.3d 524, 528 (Colo.App. 2004). Nor will we interpret it in a manner frustrating its stated purpose of requiring heightened candor and disclosure between parties in domestic relations cases to reduce the negative impacts of adversarial litigation in such cases. *See Schwankl v. Davis,* 85 P.3d 512, 516–17 (Colo. 2004) (concluding that appellate court erred by interpreting statute so as to frustrate the General Assembly's stated goals).

¶ 24 Second, husband contends that allowing the use of C.R.C.P. 16.2(e)(10) to set aside non-final agreements or pre-trial orders "opens the door to a flood of appeals of pre-trial rulings where a party has any reason to assert any information that is ostensibly covered by Rule 16.2." We disagree because, as noted, the court had adopted the MOU provisions, initially as partial permanent orders, and then ultimately in the final permanent orders, before wife initiated her appeal. Thus, finality is not an issue. And, the issue can also arise in future appeals only after a final judgment has been entered. *See State ex rel. Suthers v. CB Servs. Corp.,* 252 P.3d 7, 10 (Colo.App.2010) ("The final judgment requirement is jurisdictional."); *see*

*also* § 13–4–102(1), C.R.S. 2014; C.A.R. 1(a)(1).

¶ 25 Also, it is not our disposition here that, as husband suggests, opens new floodgates. Rather, the plain language of C.R.C.P. 16.2(e)(10) allows a five-year period within which to reallocate "material assets or liabilities, the omission or non-disclosure of which materially affects the division of assets and liabilities." *See Dadiotis*, ¶ 8 (applying "plain language" analysis to the rule).

■ ¶ 26 Third, husband contends that we need not decide whether the court erred by not granting wife's motion to reopen the property division because his nondisclosures as to Big R did not materially affect the property division. We disagree. Although the court did not reach the issue of materiality because it did not apply C.R.C.P. 16.2(e)(10), the record reveals that the MOU and permanent orders allocated $250,000 as wife's one-half interest in Big R. Assuming this $500,000 value for Big R, the only asset allocated under permanent orders that was worth more was the parties' marital home, and its $640,000 value was offset by a $378,000 mortgage. Thus, the state of the record as it existed at the time of permanent orders indicates that Big R was a significant marital asset and, therefore, that husband's nondisclosures likely materially affected the overall division of the marital estate.

■ ¶ 27 We reject husband's final contention that wife's failure to include a transcript of the testimony from the permanent orders hearing precludes us from considering this issue. Our disposition is based on a question of law, *see In re Marriage of Stewart*, 43 P.3d 740, 741 (Colo.App.2002) (rejecting contention that failure to provide transcript mandates presumption of affirmance when the issue is a question of law), and wife does not contend that the district court's order denying her relief under C.R.C.P. 16.2(e)(10) is contrary to the evidence. *See* C.A.R. 10(b) (requiring a transcript of the evidence when "the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence").

¶ 28 Accordingly, we conclude that the court should have applied C.R.C.P. 16.2(e)(10) and granted wife's motion to reopen the property division, despite the MOU language.

## II. Appellate Attorney Fees

¶ 29 Wife requests an award of her attorney fees incurred on appeal under section 14–10–119, C.R.S. 2014, contending that the parties' financial circumstances are disparate. Because the district court is better equipped to evaluate the parties' current relative economic circumstances, we remand her request to the district court. *See* C.A.R. 39.5; *In re Marriage of Williamson*, 205 P.3d 538, 543 (Colo.App.2009).

## III. Conclusion

¶ 30 We reverse the order denying wife relief under C.R.C.P. 16.2(e)(10) from the MOU provision regarding Big R. We remand the case for the court to first, apply the rule and, further, if it determines that it is appropriate under the rule, to reconsider the property division as to Big R, and to address wife's section 14–10119 request for appellate attorney fees.

JUDGE FOX concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES, specially concurring.

¶ 31 I write separately to emphasize the narrowness of our holding in this case.

¶ 32 It is commonplace for parties to settle disputes based on incomplete information. This is so in non-dissolution of marriage civil cases where C.R.C.P. 26 requires parties to disclose certain categories of information and documents "without awaiting a discovery request." C.R.C.P. 26(a)(1). Notwithstanding a party's failure to comply with that obligation, a court ordinarily will enforce a settlement agreement reached after those disclosures are due. This is because, in settling a case, a party understands, or is deemed to understand, that it is foregoing the opportunity to learn of additional relevant information that may be in an opposing party's possession. And the judicial system recognizes a strong public policy favoring the enforcement of settlement agreements and the final-

ity of litigation. *See MWS Wire Indus., Inc. v. Cal. Fine Wire Co.,* 797 F.2d 799, 802 (9th Cir.1986); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir.1976); *Denburg v. Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 604 N.Y.S.2d 900, 624 N.E.2d 995, 1000 (1993).

¶ 33 This policy no doubt applies to dissolution of marriage cases. But it has been tempered in this context by C.R.C.P. 16.2(e)(10). That provision states that the court entering a decree of dissolution retains jurisdiction thereafter for five years specifically to enforce the disclosure obligations of C.R.C.P. 16.2(e). As a remedy for material nondisclosure, a court may set aside the original decree and reallocate assets and liabilities. In so providing, C.R.C.P. 16.2(e)(10) does not distinguish between decrees entered based on settlements between parties and those entered following contested hearings.

¶ 34 Thus, dissolution of marriage cases differ from ordinary civil cases (in which C.R.C.P. 26 governs disclosures) by placing even greater emphasis on a party's obligation to proactively disclose material information. In doing so, it provides an avenue for setting aside a final judgment not ordinarily available in civil cases.

¶ 35 I think that, conceivably, parties in a dissolution of marriage case could settle any dispute over division of marital assets and liabilities in a way that waives any right to later seek to set aside the decree under C.R.C.P. 16.2(e)(10). But such a waiver would have to be very explicit, and would have to acknowledge that the parties may not have complied with their disclosure obligations under C.R.C.P. 16.2(e), but that they desire to settle regardless of any such failure, whether deliberate or otherwise. The language of the settlement agreement on which husband relies in this case does not go quite that far. Therefore, wife retained the right to seek to set aside the decree under C.R.C.P. 16.2(e)(10).

¶ 36 In sum, our resolution of this case turns on two considerations: the language of C.R.C.P. 16.2(e)(10) and the specific language of the settlement agreement. No one should

regard our decision as having any relevance outside the dissolution of marriage context.