504 P.3d 988
2021 COA 141
IN RE the MARRIAGE OF Delinda EVANS, Appellee,
and
Kenneth Evans, Appellant.
Court of Appeals No. 20CA1104
Colorado Court of Appeals, Division III.
Announced November 18, 2021
Griffiths Law PC, Duncan L. Griffiths, Christopher Griffiths, Kimberly Newton, Lone Tree, Colorado, for Appellee
Law Office of Anthony J. DiCola, Anthony J. DiCola, Heather A. Stein, Hot Sulphur Springs, Colorado, for Appellant
Opinion by JUDGE FURMAN
¶ 1 In this post-dissolution of marriage proceeding, Kenneth Evans (husband) appeals a judge's order adopting a magistrate's order that allocated a previously undisclosed marital asset, modified his child support obligation, awarded attorney and expert witness fees to Delinda Evans (wife), and imposed an order for security against him. We affirm in part, reverse in part, and remand for further proceedings. ¶ 2 In a dissolution of marriage proceeding, the district court distributes property according to section 14-10-113, C.R.S. 2021. As a matter of first impression, we hold that the district court, when allocating a previously misstated or omitted asset under C.R.C.P. 16.2(e)(10), must follow section 14-10-113, making relevant factual findings and considering the parties’ financial circumstances at the time the property division is to become effective. ( C.R.C.P. 16.2(e)(10) was amended effective March 5, 2020. Our discussion of the rule does not address any amended language.)
I. The Property Division and Child Support
¶ 3 As part of the 2013 decree dissolving the parties’ fifteen-year marriage, the district court approved their separation agreement and parenting plan, which resolved all issues concerning property division, parenting time, child support, maintenance, and attorney fees.
¶ 4 In 2016, wife sought to modify husband's $534 monthly child support obligation based on her anticipated employment and belief that husband had more income than he originally disclosed. Through discovery, wife learned that husband had failed to disclose his 100% ownership interest in Premier Earthworks & Infrastructure, Inc. (PEI), during the dissolution proceedings. Wife asked the court to reopen the property division under C.R.C.P. 16.2(e)(10) and allocate the ownership interest in PEI as a marital asset. Husband objected.
¶ 5 In February 2018, after a four-day hearing, a district court magistrate granted wife's C.R.C.P. 16.2(e)(10) motion and her child support modification request. The magistrate found that husband failed to disclose his 100% ownership interest in PEI — a marital asset — during the dissolution proceedings. The magistrate awarded wife $1,168,639 as her share of the value of husband's PEI ownership interest and ordered husband to provide security to insure payment of his obligation. The magistrate then increased husband's monthly child support obligation to $12,000 based, in part, on the parties’ $397,432 combined monthly gross income. The magistrate also found it equitable for husband to pay $62,691.75 of wife's attorney and expert witness fees because of the parties’ disparate incomes and the finding that husband's failure to disclose his ownership interest of PEI led to the need for supplemental proceedings.
¶ 6 Husband sought judicial review of the magistrate's February 2018 order.
¶ 7 In January 2019, the judge adopted the magistrate's decision, reopened the property division under C.R.C.P. 16.2(e)(10), and upheld the magistrate's findings and orders concerning child support and attorney fees. But the judge rejected the magistrate's allocation of the ownership interest in PEI and remanded the case for "further findings regarding the C.R.S. § 14-10-113 factors on which the magistrate relied in allocating the PEI marital asset."
¶ 8 In February 2019, the magistrate made findings under section 14-10-113 and reaffirmed the equal allocation of the ownership interest in PEI. The judge adopted this order in May 2020 and husband timely appealed.
II. Wife's Assertions Regarding Preservation
¶ 9 Husband raises six arguments on appeal — five arguments concern the February 2018 order, and the remaining argument concerns the February 2019 order. Wife contends that none of these arguments are preserved for appeal.
504 P.3d 993 We conclude that they are.
A. Jurisdiction ¶ 10 Wife first contends that we lack jurisdiction to consider arguments regarding the February 2018 order, specifically those concerning the magistrate's decisions to reopen the property division, modify child support, and award attorney fees. It is wife's position that the judge entered a final order on those issues in January 2019, which order husband did not timely appeal. We disagree. ¶ 11 Our jurisdiction is limited to review of final, appealable judgments or orders. People in Interest of S.C. , 2020 COA 95, ¶ 6, 469 P.3d 564 ; C.A.R. 1(a). An order is final if it ends the action, leaving nothing further to be done to determine the parties’ rights. People in Interest of M.R.M. , 2021 COA 22, ¶ 13, 484 P.3d 807. A final, appealable order is one that prevents further proceedings or effectively terminates the proceedings. S.C. , ¶ 6 ; see also Cyr v. Dist. Ct. , 685 P.2d 769, 770 (Colo. 1984) (holding that an entire case must be decided before any ruling in that case can be appealed). Piecemeal review of orders that do not fully resolve an issue or claim is generally discouraged at any level of review, including the review or appeal of a magistrate's order. In re Marriage of Roosa , 89 P.3d 524, 529 (Colo. App. 2004) ; see also Hait v. Miller , 38 Colo. App. 503, 505, 559 P.2d 260, 261 (1977) ("We do not engage in piecemeal review of a case....").
¶ 12 In the January 2019 order, the judge adopted some of the magistrate's February 2018 findings but rejected the allocation of PEI and remanded the case for the magistrate to make further findings. Thus, neither the February 2018 nor the January 2019 orders fully resolved the case or terminated the proceedings. The case was not fully resolved until the judge adopted the magistrate's February 2019 order in May 2020. See M.R.M. , ¶ 13 ; S.C. , ¶ 6. Thus, husband's timely appeal of the May 2020 order gives us jurisdiction to consider the findings and orders entered in February 2018.
B. Timeliness ¶ 13 Wife also contends that husband is barred from appealing the magistrate's February 2019 order because his petition for review was untimely filed with the district court. We disagree.
¶ 14 C.R.M. 7(a)(5) allows the parties to file a petition for review of a magistrate's order "no later than ... 21 days from the date the final order or judgment is mailed or otherwise transmitted to the parties." If a party fails to request timely judicial review, the magistrate's order or judgment becomes the order or judgment of the district court and appeal of the district court's order is barred. C.R.M. 7(a)(12). ¶ 15 The magistrate rules do not contain a separate section on procedure. See In re Marriage of Talbott , 43 P.3d 734, 735 (Colo. App. 2002). But district court magistrates have the power to preside over proceedings arising under the Uniform Dissolution of Marriage Act (UDMA), §§ 14-10-101 to - 133, C.R.S. 2021, and the Colorado Rules of Civil Procedure apply to all proceedings under the UDMA, § 14-10-105(1), C.R.S. 2021. Hence, the Colorado Rules of Civil Procedure apply to a magistrate's proceeding. See Talbott , 43 P.3d at 735.
¶ 16 In computing any time period prescribed or allowed by the Rules of Civil Procedure, C.R.C.P. 6(a)(1) provides that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." See also § 2-4-108(2), C.R.S. 2021 (same definition applies to construction of statutes); C.A.R. 26(a) (same definition applies to Colorado Appellate Rules).
¶ 17 The magistrate entered the pertinent order on February 3, 2019, meaning that any petition for review filed under C.R.M. 7(a)(5) should have been filed by February 24, 2019. But because February 24 was a Sunday, the twenty-one-day deadline under C.R.M. 7(a)(5) was extended until the end of the next day, which was not a Saturday, Sunday, or legal holiday. See C.R.C.P. 6(a). February 25, 2019, was not a Saturday, Sunday,
504 P.3d 994 or legal holiday, so it became the last day on which a party could file a petition to review the order. See id. Husband filed his petition on February 25. His appeal of the February 2019 order is therefore timely.
C. Future References
¶ 18 We refer to the February 2018 and February 2019 orders together as "the magistrate's order." We similarly refer to the judge's January 2019 and May 2020 reviews of the magistrate's order as "the judge's order."
III. C.R.C.P. 16.2(e)(10)
¶ 19 Because this case involves a reopened property division under C.R.C.P. 16.2(e)(10), we start by discussing this rule. ¶ 20 "Family members stand in a special relationship to one another and to the court system." C.R.C.P. 16.2(a). "Parties to domestic relations cases owe each other and the court a duty of full and honest disclosure of all facts that materially affect their rights and interests and those of the children involved in the case." C.R.C.P. 16.2(e)(1). The intent of this rule is to reduce the negative impacts of adversarial litigation in domestic relations cases. In re Marriage of Hunt , 2015 COA 58, ¶ 9, 353 P.3d 911. To that end, each party has an affirmative obligation to disclose all information material to the resolution of the case without awaiting inquiry from the other party. C.R.C.P. 16.2(e)(1).
¶ 21 C.R.C.P. 16.2(e)(10) states as follows:
If a disclosure contains a misstatement or omission materially affecting the division of assets or liabilities, any party may file and the court shall consider and rule on a motion seeking to reallocate assets and liabilities based on such a misstatement or omission, provided that the motion is filed within 5 years of the final decree or judgment.... ¶ 22 This rule provides a remedy when a party violates the rigorous disclosure requirements of Rule 16.2 and "gives equitable powers to the court in cases where a material asset or liability has not been disclosed." In re Marriage of Durie , 2018 COA 143, ¶ 18, 459 P.3d 637 (quoting David M. Johnson et al., New Rule 16.2 : A Brave New World , 34 Colo. Law. 101, 106 (Jan. 2005) ), aff'd but criticized , 2020 CO 7, ¶ 18, 456 P.3d 463.
IV. Wife Did Not Waive Her Right to Seek an Allocation of PEI ¶ 23 Husband contends that wife waived her right to invoke C.R.C.P. 16.2(e)(10) and seek an allocation of PEI when she entered into the separation agreement. We disagree.
A. Standard of Review ¶ 24 Waiver is the intentional relinquishment of a known right; it may be express, as when a party states its intent to abandon an existing right, or implied, as when a party engages in conduct which manifests an intent to relinquish the right or acts inconsistently with its assertion. In re Marriage of Hill , 166 P.3d 269, 273 (Colo. App. 2007). ¶ 25 We review a district court's waiver conclusion for an abuse of discretion. In re Marriage of Kann , 2017 COA 94, ¶ 56, 488 P.3d 245. A court abuses its discretion when it misconstrues or misapplies the law, or decides in a manifestly arbitrary, unreasonable, or unfair way. Id.
B. The Business Evaluation
¶ 26 During the proceedings, wife obtained an order allowing Brian Campbell and Boris Sobolev from Cornerstone CPA Group "to perform a business evaluation of Overlook Mine & Gravel, LLC, Resources, LLC and Overlook Mine, LLC d/b/a Reclamation Ridge or any other businesses operated by" husband.
¶ 27 About a month later, and before the evaluation was completed, the parties entered into their separation agreement that included these provisions:
24. Marital Businesses: Husband shall receive as his separate property the marital businesses known as Overlook Mine & Gravel, LLC, Resources, LLC; Overlook Mine, LLC d/b/a Reclamation Ridge (except any property titled in the name of the businesses but assigned to the wife as set forth below) and any other business operated by the husband during the marriage. Husband shall receive all of the assets of the businesses and shall be solely responsible for any debts or encumbrances thereto....
25. Wife acknowledges she has a Court Order allowing her to have an evaluation performed of the marital businesses to determine their value. Wife is voluntarily giving up that right by entering into this agreement. The parties will contact Cornerstone CPA to inform them to stop further work on the business evaluation.
....
47. The Agreement is made upon the assumption that each of the parties has made a full, complete, honest, accurate, and total disclosure to the other of the nature and extent of all assets and obligations of the parties. As to any assets of the parties to which no such full disclosure has been made by either of the parties, this Agreement shall become null and void. The Court shall, upon such subsequent discovery of assets of either party, retain full jurisdiction to divide such additional assets appropriately.
C. Analysis
¶ 28 The present case is like Hunt . In Hunt , ¶¶ 1, 3-4, the district court adopted, as partial permanent orders, the parties’ mediated memorandum of understanding (MOU) that awarded the wife $250,000 for her 50% share of the husband's business. The wife later sought relief under C.R.C.P. 16.2(e)(10) after she learned that husband did not disclose required information regarding the business's value, including his personal and business financial statements, loan applications and agreements, an appraisal of the business's real property, and an appraisal of the business's equipment. Id. at ¶¶ 5, 15. The husband did not dispute that the "underlying information" was not disclosed before the parties entered into the MOU. Id. at ¶ 15. Still, the court denied the wife's request for relief because she chose to enter into the MOU without further valuing the business. Id. at ¶ 6.
¶ 29 The division in Hunt reversed. Id. at ¶ 30. Had the husband not violated C.R.C.P. 16.2, according to the division, the wife would have been bound by her decision to enter into the MOU. Id. at ¶ 19. But because the wife did not have "all the information she was entitled to receive under the rule" and, thus, could not "have knowingly and intelligently waived her right to conduct any further due diligence as to the value of" the business when she entered into the MOU, the division rejected the court's conclusion that the wife should be bound by its terms. Id. Indeed, the division surmised that had the wife received the documents husband withheld, she might not have entered into the MOU. Id.
¶ 30 In a special concurrence, Judge J. Jones commented that parties could settle their disputes over division of marital assets and liabilities "in a way that waives any right to later seek to set aside the decree under C.R.C.P. 16.2(e)(10)." Id. at ¶ 35. "But, such a waiver would have to be very explicit, and would have to acknowledge that the parties may not have complied with their disclosure obligations under C.R.C.P. 16.2(e), but that they desire to settle regardless of any such failure, whether deliberate or otherwise." Id. (J. Jones, J., specially concurring).
¶ 31 The parties’ separation agreement did not contain any such explicit acknowledgment. According to paragraph 47, wife entered into the separation agreement "upon the assumption that each of the parties has made a full, complete, honest, accurate, and total disclosure to the other of the nature and extent of all assets...." But husband does not dispute that he knew about PEI's existence during the dissolution proceedings and that he did not tell wife about PEI or disclose any documents relevant to its existence or valuation during those proceedings or the settlement negotiations. Therefore, wife did not have all the information she was entitled to receive and could not have knowingly, intelligently, or explicitly waived her right to assert any interest in PEI when she entered into the separation agreement.
¶ 32 Husband's reliance on In re Marriage of Runge , 2018 COA 23M, ¶ 34, 415 P.3d 884, for the proposition that C.R.C.P. 16.2(e)(10)
504 P.3d 996 could not rescue wife "from the consequences of her own decision to settle her dissolution case without fully evaluating the information that husband had provided to her pre-decree" is misplaced. In Runge , the wife, who received full disclosure from husband, entered into a separation agreement without allowing her attorney or accounting expert to analyze husband's disclosures or investigate his other business entities or interests, which she knew about. Id. at ¶¶ 25, 30-31, 38. The division held that the wife was bound by her decision to enter into the separation agreement because she chose, "perhaps unwisely, to settle a dissolution case after acknowledging the complexity of and before fully evaluating the information provided by the other party." Id. at ¶¶ 38, 40.
¶ 33 Unlike the wife in Runge , wife here entered into the separation agreement without being armed with all relevant information because husband failed to disclose PEI.
¶ 34 But wait, says husband. Wife would "more likely than not" have discovered the existence of PEI if she had continued with the business evaluation in 2013. We are unpersuaded for two reasons. First, wife should not have had to conduct a thorough business evaluation to determine the existence of a marital asset that husband had an affirmative obligation to disclose. See C.R.C.P. 16.2(e)(1) ; see also Hunt , ¶ 20 ("[U]nder the special provisions of C.R.C.P. 16.2, uniquely applicable in domestic relations cases, it was not wife's burden to request these documents before entering into the MOU. Rather, it was husband's affirmative duty to provide them to her.").
¶ 35 Second, the record does not conclusively support husband's contention. Recall that the court appointed Boris Sobolev to evaluate husband's businesses. Sobolev testified that husband provided him with the books and records for his other business, Overlook Mine & Gravel, LLC, but nothing for PEI. Sobolev knew about PEI in 2013 because he saw the entity in Overlook's books and records. But Sobolev testified that he could not tell from Overlook's books alone whether PEI was husband's business or just a customer, since "it doesn't say ‘Mr. Evans’ on it." When asked directly whether he would have discovered that husband owned PEI had he completed a full investigation in 2013, Sobolev answered,
Can't say definitively. I do believe I probably would, but I would have had to have been provided with some sort of disclosure that [PEI] is related to Mr. Evans.... Again, I — if I see [PEI], it doesn't tell me anything. There's many other companies out there that — you can't tell the ownership unless you're given ownership documents or tax returns or — things like that.
¶ 36 We also reject husband's contention that wife waived her right to assert any interest in PEI because paragraph 24 of the parties’ separation agreement awarded him, as his separate property, "any other business operated by husband during the marriage." His argument overlooks paragraph 47 in the separation agreement providing that (1) each party assumed that the other party had made a full disclosure of all assets; (2) the agreement would be null and void as to any asset not fully disclosed; and (3) the court shall retain jurisdiction to divide any nondisclosed asset.
¶ 37 Husband did not provide a full disclosure of PEI as contemplated by paragraph 47 and as required by C.R.C.P. 16.2. Hence, the separation agreement is null and void as to PEI and the court had jurisdiction to divide the asset.
V. Husband Owned PEI and the Magistrate Correctly Reopened the Property Division ¶ 38 Husband contends that the magistrate erred when she reopened the property division under C.R.C.P. 16.2(e)(10) and allocated the ownership interest in PEI between the parties after finding that a third party, Cody Salyards, and not husband, owned PEI. We disagree.
A. Applicable Standards of Review ¶ 39 The reviewing judge may not alter a magistrate's findings unless they are clearly erroneous. C.R.M. 7(a)(9) ; In re Marriage of Young , 2021 COA 96, ¶ 8, 497 P.3d 524. Our review of the judge's order is effectively a second level of appellate review, 504 P.3d 997
so we apply the same clearly erroneous standard. Young , ¶ 18. "A court's finding of fact is clearly erroneous if there is no support for it in the record." Gagne v. Gagne , 2019 COA 42, ¶ 17, 459 P.3d 686.
¶ 40 We review the magistrate's interpretation and application of C.R.C.P. 16.2 de novo. See Hunt , ¶ 10.
B. Ownership Interest
¶ 41 Cody Salyards formerly worked for husband. Salyards testified that, in 2010, he started PEI, which, as a start-up, did not have the equipment or capital to obtain large jobs. Salyards testified that he reached out to husband in 2013 for equipment and financial backing for a large job at Stapleton. He testified that husband agreed to provide equipment, guarantee bonds of $5 to $10 million, and accept liability for the Stapleton project. Salyards testified that until he sought husband's help for the Stapleton project, husband had nothing to do with PEI.
¶ 42 Rick Miller, an attorney who worked for husband and PEI, testified that he filed PEI's articles of incorporation in 2010. He testified that husband was the named incorporator of the business, and that the business's address was husband's home address. But Miller said that an incorporator merely acknowledges that the filing is accurate and that an individual does not necessarily have significance to, an ownership interest in, or control of the business he or she incorporated. Miller testified that he prepared (1) unsigned stock certificates giving Cody Salyards 100,000 shares of the business; and (2) minutes for a December 13, 2010, annual meeting that showed Salyards as "all of the directors and stockholders" of the business. But Miller testified that, in 2014, he prepared unsigned stock certificates reflecting that husband owned PEI. Miller said that Salyards gave husband the shares as a quid pro quo after husband provided equipment and financing on the Stapleton project. Salyards echoed that he gave husband his shares in 2014 because husband "had the skin in the game."
¶ 43 The magistrate found that Salyards "was the original & sole shareholder until February 2013." But the magistrate found that
none of the documents were actually signed regarding the purported ownership of the corporation; to whom shares were issued; or, on what dates shares were issued.... Both [wife]’s and all of [husband]’s exhibits regarding the minutes or shares of PEI, were unsigned drafts. Neither [husband] nor any of [his] witnesses could say whether they had ever been executed.
¶ 44 Instead, the magistrate found it "[m]ost convincing" that husband listed himself as 100% owner of PEI on the Form K-1 he filed with his signed 2013 tax year return. The magistrate also found that the Secretary of State filings showed husband as PEI's incorporator. The magistrate determined that this evidence established that husband was the 100% owner of PEI during the dissolution of marriage proceedings. Because husband failed to disclose any interest in PEI during the proceedings, the magistrate found that husband violated his affirmative duty to provide financial information to wife, thus entitling her to relief under C.R.C.P. 16.2(e)(10).
C. Analysis ¶ 45 The magistrate's finding that husband owned PEI in 2013 is supported by the record. While the magistrate found that Salyards was the original sole shareholder of the business, she did not believe that he was the owner in 2013, particularly absent any signed documents purporting to show his ownership. Nor did the magistrate believe husband, Salyards, or any other witness who testified that Salyards, not husband, owned PEI in 2013. See In re Marriage of Amich , 192 P.3d 422, 424 (Colo. App. 2007) (district court can believe all, part, or none of a witness's testimony, even if uncontroverted). The magistrate, acting within her discretion to resolve the conflicting evidence, concluded that husband's signed 2013 tax return and filings with the Secretary of State showed that husband owned PEI in 2013. We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record. 504 P.3d 998
See LR Smith Invs., LLC v. Butler , 2014 COA 170, ¶ 25, 378 P.3d 743.
¶ 46 We likewise will not disturb the magistrate's decision to reopen the property division. Husband's failure to disclose the existence of a marital asset violated C.R.C.P. 16.2 and entitled wife to seek relief under C.R.C.P. 16.2(e)(10).
VI. The Court's Process After Reopening a Property Division Under C.R.C.P. 16.2(e)(10)
¶ 47 Husband contends that the magistrate did not consider any of the section 14-10-113 factors when allocating PEI. In the context of this argument, the parties’ briefs raise three questions that this court has never answered: (1) Does reopening a property division under C.R.C.P. 16.2(e)(10) require a complete reallocation of the marital estate? (2) Are the section 14-10-113 factors relevant when allocating a previously misstated or omitted asset under C.R.C.P. 16.2(e)(10) ? (3) Does the court allocate the previously misstated or omitted asset based on the parties’ circumstances at the time of the C.R.C.P. 16.2(e)(10) proceeding or at the time of the original decree? We consider these questions before we resolve husband's argument.
A. C.R.C.P. 16.2(e)(10) Does Not Require a Complete Reallocation of the Marital Estate
¶ 48 Recall that C.R.C.P. 16.2(e)(10) provides as follows:
If a disclosure contains a misstatement or omission materially affecting the division of assets or liabilities, any party may file and the court shall consider and rule on a motion seeking to reallocate assets and liabilities based on such a misstatement or omission, provided that the motion is filed within 5 years of the final decree or judgment....
This language suggests, but does not specify, that a reopened property division need consider only the allocation of the nondisclosed or misstated asset or liability. In analyzing this rule, the supreme court has reasoned:
Under [ C.R.C.P. 16.2(e)(10) ], the court retains jurisdiction for a period of five years after entry of a final decree in case a party's disclosures turn out to have contained "misstatements or omissions." In such a situation, the court may "allocate [the] material assets or liabilities" that were misstated or omitted if their misstatement or omission "materially affects the division of assets and liabilities." Durie , 2020 CO 7, ¶ 15, 456 P.3d 463 (emphasis added) (citation omitted). Durie thus seems to confine the court's allocation under the old version of C.R.C.P. 16.2(e)(10) to those misstated or omitted assets or liabilities.
¶ 49 Under the pre-amended C.R.C.P. 16.2(e)(10) and Durie , the court may allocate the omitted or misstated asset without reopening the entire property division. This case does not present circumstances that require us to consider whether the rule would have permitted the court to reopen the entire property division, because that is not what happened here. We therefore express no opinion on that issue.
B. The Section 14-10-113 Factors Are Relevant
¶ 50 Section 14-10-113(1) specifies that the district court shall divide the marital property in such proportions as it deems just after considering all relevant factors, including:
(a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(b) The value of the property set apart to each spouse;
(c) The economic circumstances of each spouse at the time the division of property is to become effective ... ; and
(d) Any increases or decreases in the value of separate property of the spouse during the marriage or the depletion of separate property for marital purposes.
¶ 51 The C.R.C.P 16.2(e)(10) hearing is the first time the misstated or omitted property will be valued and equitably divided. Hence, it follows that the court should consider the section 14-10-113(1) factors when allocating such property under C.R.C.P. 16.2(e)(10).
¶ 52 As part of the section 14-10-113 inquiry,
504 P.3d 999 the court must also value the previously misstated or omitted asset "as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree." § 14-10-113(5) ; see In re Marriage of Finer , 920 P.2d 325, 331 (Colo. App. 1996) (finding section 14-10-113(5) is mandatory).
C. A C.R.C.P. 16.2(e)(10) Allocation Considers the Parties’ Current Economic Circumstances ¶ 53 A marital property distribution requires the court to consider the economic circumstances of each spouse when the property division becomes effective, whether that division occurs during the permanent orders or at a remand hearing. See § 14-10-113(1)(c) ; see also In re Marriage of Wells , 850 P.2d 694, 699 (Colo. 1993) ("In determining the circumstances of the parties for purposes of making an equitable award of the couple's marital property, a trial court may properly consider the economic circumstances of each spouse at the time of the permanent orders hearing."); In re Marriage of Morton , 2016 COA 1, ¶ 14, 369 P.3d 800 ("Because we are reversing the trial court's division of marital property and debts, on remand the court must consider the parties’ economic circumstances at the time of the remand."). ¶ 54 It thus follows that when a court allocates a previously misstated or omitted asset under C.R.C.P. 16.2(e)(10), it must consider the parties’ economic circumstances at the time of the C.R.C.P. 16.2(e)(10) hearing. See In re Marriage of Balanson , 107 P.3d 1037, 1047 (Colo. App. 2004) (" Section 14-10-113(1)(c) ... requires a trial court to consider the economic circumstances of the respective spouses at the time any hearing relating to the division of marital property is held....") (emphasis added).
¶ 55 Allocating a previously misstated or omitted asset based on the parties’ economic circumstances at the time of the decree, as husband urges, ignores any benefit reaped by the party who failed to disclose. As the magistrate found, wife was a homemaker and raised the parties’ children during the marriage so husband could build his construction business. Thus, PEI's tremendous success was due to both parties’ contributions to the marriage. (For example, PEI had $5,908,000 of gross receipts in 2013, $34,849,000 in 2014, and $44,108,261 in 2015.) Allocating the value of PEI based on the parties’ 2013 circumstances, and not their circumstances at the time of the C.R.C.P. 16.2(e)(10) hearing, would ignore both parties’ contributions and could give one party a windfall at the other party's expense. Such a result is not in keeping with section 14-10-113 ’s intent to ensure a just and equitable property division. See Wells , 850 P.2d at 697 (determining property division is equitable in nature).
D. Analysis
¶ 56 We conclude the magistrate did not err in allocating PEI.
¶ 57 The magistrate allocated only the value of the previously undisclosed marital asset, PEI, and did not reconsider or adjust the earlier property division. The magistrate valued PEI as of the 2013 decree, relying on husband's expert's valuation of the business. The magistrate equally divided the value of PEI based on her findings that (1) husband continued to own and operate the business, see § 14-10-113(1)(a) ; and (2) the parties’ economic circumstances, which were similar at the time of the decree, were no longer similar because husband had more income and assets than he had at the time of the decree, see § 14-10-113(1)(c).
VII. The Child Support Findings Are Not Supported by the Record ¶ 58 Husband contends that the magistrate made no findings to support the $12,000 monthly child support order. We agree that further findings are required on remand.
A. Law ¶ 59 We review a child support order for an abuse of discretion. In re Marriage of Boettcher , 2019 CO 81, ¶ 12, 449 P.3d 382. ¶ 60 The child support guidelines are designed to calculate child support based on the parents’ combined adjusted gross income 504 P.3d 1000
that would have been allocated to the children if the parents and children were still living in an intact household. § 14-10-115(1)(b)(I), C.R.S. 2021. There is a rebuttable presumption that a child support award should match the amount shown in the schedule. See § 14-10-115(8)(e) ; Boettcher , ¶ 14. ¶ 61 But the guidelines only provide specific presumptive child support award amounts for combined monthly incomes between $1,550 and $30,000. See § 14-10-115(7)(b). The district court must use its discretion in determining child support where the parties’ combined adjusted gross income exceeds the uppermost level of the child support guidelines. § 14-10-115(7)(a)(II)(E) ; see also Boettcher , ¶ 17. In exercising that discretion, the court must consider all relevant factors, including those listed in section 14-10-115(2)(b). See In re Marriage of Boettcher , 2018 COA 34, ¶ 11, 454 P.3d 321, aff'd , 2019 CO 81, 449 P.3d 382. ¶ 62 Whatever support amount the court awards, its findings must be sufficiently specific to inform us of the basis for its order. In re Marriage of Garrett , 2018 COA 154, ¶ 11, 444 P.3d 812.
B. Analysis
¶ 63 The magistrate did not explain the basis for the $12,000 monthly child support figure. The magistrate made specific findings about the parties’ incomes, the parties’ and children's extravagant standard of living during the marriage, and the parties’ testimony about how much money they spent on the children each month. Yet, none of these findings allow us to ascertain why the magistrate found that the children needed $12,000 per month in child support.
¶ 64 The magistrate may have based the support amount on the wife's testimony that the children needed $11,000 per month and husband's testimony that he spent between $6,000 and $14,000 per month on the children. But if that's the case, then the magistrate improperly placed the burden to provide for the children's reasonable needs entirely on husband. See § 14-10-115(7)(a)(I) ; see also People v. Martinez , 70 P.3d 474, 477 (Colo. 2003) (holding that both parents have a duty to support their children); In re Marriage of Alvis , 2019 COA 97, ¶ 11, 446 P.3d 963 (recognizing that the child support statute provides for a shared basic child support obligation).
¶ 65 We therefore reverse the $12,000 monthly child support award and remand for further, specific findings. Considering that the parties’ combined monthly gross income exceeds $30,000, the court may use its discretion to determine child support.
¶ 66 The court on remand may again make the child support award retroactive. See Garrett , ¶ 21 (if there has been a court ordered, voluntary, or mutually agreed upon change in the physical care of a child, child support is modified as of the date of the change in care; otherwise, child support modification order is effective as of the date the motion to modify is filed); see also § 14-10-122(1)(a), (5), C.R.S. 2021. We are not convinced by husband's argument that wife is not entitled to retroactive child support because she failed to confer before filing her motion as required by C.R.C.P. 121, section 1-15(8).
VIII. The Order for Security is Not Reasonable ¶ 67 Husband contends that the magistrate abused her discretion when she ordered him to provide security to insure the enforcement of her orders. The magistrate ordered husband to pay wife's $1,168,639 share of the value of PEI at a minimum of $50,000 per month until paid in full. She also ordered that husband's payments toward this obligation "shall create a lien against all [husband]’s rights, title and interest in PEI, Overlook and any other assets in his name." We reverse this order because it is unsupported by sufficient factual findings. ¶ 68 Under section 14-10-118(2), C.R.S. 2021, "[t]he court has the power to require security to be given to insure enforcement of its orders." Amounts of security must be reasonable both in amount and duration. In re Marriage of Jaeger , 883 P.2d 577, 580 (Colo. App. 1994). "If the amount ordered by the trial court as security is greatly in excess of the amount actually owed, it is not security, but is confiscatory." Id. 504 P.3d 1001
The court should make factual findings as to the amount and duration reasonably necessary to ensure payment of the obligations. Id. at 580-81. Because the decision to order security under section 14-10-118 is discretionary with the court, we review its order for an abuse of that discretion. In re Marriage of Marshall , 781 P.2d 177, 179 (Colo. App. 1989).
¶ 69 The magistrate made no findings to support the order for security. Nor did the magistrate explain why it was reasonable to create a lien against all "assets in [husband's] name." While the court may impress a lien upon one spouse's real property to secure monetary payments to the other under the dissolution decree, In re Marriage of Valley , 633 P.2d 1104, 1105 (Colo. App. 1981), a lien on all of husband's assets to secure payment of wife's share of PEI appears confiscatory. See Jaeger , 883 P.2d at 580.
¶ 70 We therefore reverse the order for security and remand for explicit factual findings. Any new order must be reasonable in both amount and duration, and must relate to all the husband's financial obligations to wife.
¶ 71 We reject husband's apparent argument that a court can only order security on motion of a party, which did not occur here. Nothing in section 14-10-118 requires such a motion.
IX. The Disparity in Income Supports the Attorney Fees Award ¶ 72 We disagree with husband's argument that the magistrate did not make sufficient findings to support the order for him to pay wife $62,691.75 in attorney and expert fees. ¶ 73 Section 14-10-119, C.R.S. 2021, allows courts to apportion fees in dissolution cases between the parties based on their relative abilities to pay. In re Parental Responsibilities Concerning M.E.R-L. , 2020 COA 173, ¶ 33, 490 P.3d 1010. The parties’ overall economic circumstances, not just their incomes, are relevant. In re Marriage of Davis , 252 P.3d 530, 538 (Colo. App. 2011). Where one spouse's income and earning capacity significantly exceed those of the other spouse, those considerations may support an award of attorney fees. See Boettcher , 2018 COA 34, ¶ 35, 454 P.3d 321 (evidence of the disparity in the parties’ resources and income supported order for father to pay seventy percent of mother's fees); In re Marriage of Bohn , 8 P.3d 539, 542 (Colo. App. 2000) (attorney fees award supported by finding that father's ability to pay for the proceeding was "far better" than mother's); In re Marriage of Bregar , 952 P.2d 783, 788 (Colo. App. 1997) (upholding attorney fees award where husband's income was approximately twice that of wife's and his financial resources were vastly larger than wife's).
¶ 74 The magistrate made findings about the parties’ financial circumstances when making its child support order. In part, the magistrate found that mother earned $3,432 per month while husband earned "not less than ... $394,000" per month. We may presume that the magistrate considered those same findings when addressing the attorney fees request. See Boettcher , 2018 COA 34, ¶ 36, 454 P.3d 321. Wife incurred $92,691.75 in attorney and expert fees; she paid $30,000 of those fees. The magistrate found that, given the disparity of their incomes, it would be fair and equitable for husband to pay wife's remaining fees. As husband's monthly income is over 114 times wife's, the record supports the conclusion that he had a greater ability to pay. See M.E.R-L. , ¶ 33. ¶ 75 The magistrate also found that had husband complied with C.R.C.P. 16.2 and disclosed PEI during the dissolution proceedings, the supplemental proceedings — and wife's expenses — would not have been necessary. The court may consider whether a party's actions led to unwarranted proceedings when determining whether to award attorney fees, provided the award serves the primary purpose of apportioning the fees equitably between the parties and not as a means of punishment. See In re Marriage of Trout , 897 P.2d 838, 840 (Colo. App. 1994). Because the award here does not appear to be punitive, we see no abuse of discretion and decline to disturb the award.
X. Appellate Attorney Fees Request ¶ 76 Wife requests an award of appellate attorney fees under
504 P.3d 1002 C.A.R. 38 and 39.1. We deny her request because "[c]iting the appellate fee rule as the sole legal basis for an attorney fees request is not sufficient." In re Marriage of Wright , 2020 COA 11, ¶ 39, 459 P.3d 757 ; see also C.A.R. 39.1 (party claiming attorney fees must explain the legal and factual basis for the award).
XI. Conclusion
¶ 77 Those parts of the order modifying child support and imposing security are reversed, and the case is remanded for further findings on those issues. Pending the entry of new orders, the existing child support order and order for security will remain in place. In all other respects, the order is affirmed.
JUDGE TOW and JUDGE GOMEZ concur.