24CA1737 Parental Resp Conc MM 06-05-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1737
Adams County District Court No. 22DR777
Honorable Rayna Gokli McIntyre, Judge

In re the Parental Responsibilities Concerning M.M., a Child,

and Concerning Atlantis Keisha Davis,

Appellee,

and

Maurice Juanell Means,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
Moultrie and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

No Appearance for Appellee

Law Firm of Brian DeBauche, LLC, Brian DeBauche, Denver, Colorado, for
Appellant

* Sitting by assignment of the Chief Justice under provisions of Colo. Const.
art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Maurice Juanell Means (father) appeals the district court's judgment allocating parental responsibilities between him and Atlantis Keisha Davis (mother). We affirm.

## I.    Background

¶ 2    The parties have a son (the child) who was born in Illinois in November 2017. The parties separated in the fall of 2018. Around that time, father moved to Colorado with the child, while mother stayed in Illinois.

¶ 3    In May 2022, mother filed a petition for an allocation of parental responsibilities. She requested sole decision-making responsibility and majority parenting time in Illinois. She asserted that father should have parenting time in Colorado during the child's school breaks. Father responded to the petition and requested sole decision-making responsibility and majority parenting time in Colorado. He asserted that mother should have parenting time during school breaks but should be required to travel to Colorado to exercise it.

¶ 4    After a contested hearing, the court entered temporary orders granting mother two months of summer parenting time for 2023; the first three weeks were in Colorado and the remaining time was

in Illinois.  Mother exercised her parenting time, and when the child returned to Colorado, father took him to get a hair follicle test.[1]  The test came back positive for cocaine and marijuana exposure. Father then filed a motion to restrict mother's parenting time, but the court denied the motion noting that mother did not have any parenting time before the permanent orders hearing and that the issues father raised would be addressed then.

¶ 5        In December 2023, the district court held a contested permanent orders hearing.  Both parents testified that they were not responsible for exposing the child to cocaine.  At the end of the hearing, the court ordered the parents to take a fingernail test and stated that it would issue written permanent orders after it received those results.  Both parents complied, and the tests were negative for cocaine.

¶ 6        However, before the district court issued permanent orders, father filed a motion to reopen the matter for additional evidence because mother had not disclosed that the Illinois Department of

---

[1] The child had previously tested positive for exposure to marijuana and father wanted to show that the child could have been exposed at either party's home, not just his.

Children and Family Services (DCFS) was investigating her at the time of the permanent orders hearing. The court granted the request and held another evidentiary hearing for the parties to present information they obtained after the December 2023 hearing. At the end of the hearing, the court took the matter under advisement. About a month later, it issued permanent orders granting father sole decision-making and majority parenting time. The court granted mother weekend parenting time in Colorado, as well as parenting time in Illinois during the child's school breaks.

## II.   Analysis

¶ 7    Father contends that the district court erred by (1) finding that the best interests of the child were served by a parenting plan allowing out of state travel and (2) improperly weighing evidence of domestic violence and drug use, including the child's exposure to cocaine. We first set forth the standard of review before addressing his contentions in turn.

### A.   Applicable Law and Standard of Review

¶ 8    When allocating parenting time and decision-making responsibility, the court must focus on the child's best interests, giving paramount consideration to the child's safety and their

3

physical, mental, and emotional conditions and needs. *See* §§ 14-10-123.4(1)(a), 14-10-124(1.5), (1.7), C.R.S. 2024; *see also In re Marriage of Morgan*, 2018 COA 116M, ¶ 17. In making this determination, the court must consider all relevant factors, including those factors identified in section 14-10-124(1.5)(a) and (b). *Morgan*, ¶¶ 17, 21.

¶ 9 The district court has broad discretion over the allocation of parental responsibilities. *Id.* at ¶ 23 (analyzing decision-making responsibility); *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) (analyzing parenting time). We exercise every presumption in favor of upholding the court's parenting decisions. *See Hatton*, 160 P.3d at 330. We will not disturb a court's discretionary decision absent a showing that the court misapplied the law or acted in a manifestly arbitrary, unreasonable, or unfair manner. *See In re Marriage of Evans*, 2021 COA 141, ¶ 25.

### B. Out-of-State Parenting Time

¶ 10 Father contends that the district court abused its discretion by finding that out-of-state parenting time with mother was in the child's best interests. We're not persuaded.

¶ 11    In making its parenting time determination, the district court expressly considered the factors from section 14-10-124(1.5) and made thorough findings about the child's best interests. As relevant to whether out-of-state parenting time was in the child's best interests, the court found that "distance [was] a primary concern" because mother lives in Illinois and the child has to fly to visit her. Nonetheless, it found that when mother was caring for the child, she put the child's needs above her own and ensured that he had a safe place to live. The court also found that mother had the ability to encourage the sharing of love, affection, and contact between the child and father and that there was no reason to limit the child's ability to visit mother in Illinois for vacation and holiday parenting time. Based on those findings, the court determined that allowing the child to travel to Illinois for parenting time with mother was in his best interests.

¶ 12    The record supports these findings. Mother testified that although she understood it was best for the child to stay in his "stable home environment" with father, she believed that the child should spend his school breaks with her in Illinois. She noted that she and her partner live in a three-bedroom home and that the

child would have his own bedroom when he visited Illinois. The child's maternal grandmother testified that when she took the child to Illinois, she had no safety concerns about mother's home. And mother's adult son testified that when he was younger, he lived with mother in Illinois and felt safe at her home and in the neighborhood.

¶ 13     We reject father's argument that the court failed to properly consider his testimony that he had safety concerns about mother's home and neighborhood. To the contrary, the court specifically considered this testimony, noting that father testified that he was worried that mother's neighborhood was dangerous because it had numerous liquor stores, gang activity, negative influences, and "riffraff." The court also noted that father was concerned that mother was leaving the child with strangers when she went to work. Nonetheless, the court found that besides father's testimony, there was "no objective evidence . . . that [Illinois] is so dangerous that [the child] cannot spend time there with mother."

¶ 14     Essentially, father points to a portion of the conflicting evidence introduced at the hearing and asks us to reweigh that evidence in his favor. But it is not our role to reweigh the evidence

or disturb the court's findings when, as here, they have record support and are based on credibility determinations. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 ("[Even where] there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *see also Hatton*, 160 P.3d at 330 ("It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence.")

¶ 15    Based on the foregoing, we perceive no abuse of discretion in the district court's finding that out-of-state parenting time with mother was in the child's best interests.

C.    Evidence of Violence and Drug Exposure in Illinois

¶ 16    Father also contends that the court abused its discretion by ignoring the evidence he presented about the high crime rates in mother's neighborhood; mother's partner's history of violence and selling drugs; the child's exposure to cocaine while in mother's care; and the fact that mother failed to disclose the ongoing DCFS investigation. He argues that if the court had properly considered this evidence, then then it would not have found that it was safe for

the child to spend time in Illinois with mother. However, the record shows that the district court considered the evidence about the living environment in Illinois and the child's exposure to cocaine. As noted above, it acknowledged father's concerns about mother's home and neighborhood but did not find that those concerns were sufficient to establish that it was unsafe for the child to visit Illinois. Moreover, although the court was "extremely concerned about the [child's] positive cocaine test," it found, with record support, that it was unable to determine "where or when" the child was exposed because both parents tested negative for cocaine. And although the court shared father's concerns over mother's failure to disclose the DCFS investigation, it found, again with record support, that the DCFS finding of neglect against mother had been overturned and expunged.

¶ 17    Based on the foregoing, we disagree with father's assertion that the court failed to "adequately analyze or weigh" the evidence about possible safety risks at mother's home. To the contrary, the court considered and weighed the evidence, just not in the way father preferred. Again, we cannot reweigh the evidence. *See*

*Nelson,* ¶ 35; *Hatton,* 160 P.3d at 330.  Thus, we perceive no abuse of discretion.

### III.    Disposition

¶ 18    The judgment is affirmed.

JUDGE MOULTRIE and JUDGE BERNARD concur.